UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SENTINELONE, INC. SECURITIES LITIGATION<br><br>This Document Relates to All Actions | Case No. 23-cv-02786-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 51 |

Pending before the Court is a motion to dismiss Lead Plaintiff's putative securities class action filed against Defendants SentinelOne, Tomer Weingarten, and David Bernhardt ("Defendants"). Dkt. No. 51. For the reasons below, the Court **GRANTS** the motion to dismiss **WITH LEAVE TO AMEND**.

### I. BACKGROUND

SentinelOne is a cybersecurity company that offers its products via subscription contracts, generally on terms of one to three years. Amended Complaint ("AC") ¶ 3. The company recognizes revenue ratably over the course of a contract in accordance with Generally Accepted Accounting Principles ("GAAP"). *Id.* It also tracks three non-GAAP "key business metrics," including Annualized Recurring Revenue ("ARR"). *Id.* During the Class Period, Defendants defined ARR as "the annualized revenue run rate of our subscription and capacity contracts at the end of a reporting period, assuming contracts are renewed on their existing terms for customers that are under contracts with us." *Id.*

On June 1, 2023, Defendants announced that SentinelOne was adjusting both its previously reported ARR figures and ARR projections. *Id.* ¶ 4. Specifically, Defendants disclosed that SentinelOne needed to make a "one-time adjustment to ARR of $27.0 million or approximately

5% of total ARR" to its previously reported ARR figures. *Id.* Defendants also announced that SentinelOne's projected ARR growth for the fiscal year ending January 31, 2024 needed to be cut by roughly 25% and that its projected revenue for that fiscal year also needed to be reduced from $631–$640 million to $590–$600 million. *Id.*

Defendants offered two explanations for these adjustments. First, Defendants noted that due to changing macroeconomic factors, they needed to adjust the ARR calculations to remove amounts based on "consumption and usage," such as for excess-usage charges or other charges for additional services. *Id.* ¶¶ 6, 78. Second, Defendants disclosed that they recently discovered they had been double-counting ARR in certain circumstances. *Id.* ¶¶ 7, 79. Specifically, if a customer renewed a contract but added additional services, both the cost of those additional services and the value of the historical contract would be added into and included in the ARR. *Id.* ¶ 7. Because the ARR figure already accounted for the historical contract price, SentinelOne had apparently double-counted these ARR figures. *Id.*

In response to Defendants' revelations after close of the market on June 1, SentinelOne's stock price fell the following day by $7.28 per share, from $20.72 to $13.44 per share, or more than 35%. *Id.* ¶ 92.

Plaintiff brings this putative class action on behalf of individuals who purchased or otherwise acquired SentinelOne securities between June 1, 2022 and June 1, 2023 inclusive ("Class Period"), and who were damaged as a result of Defendants' violations of the Exchange Act ("Class"), including violations of Section 10(b) and Rule 10b-5(Count 1) and Section 20(a) (Count 2). *Id.* ¶ 106.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

2

a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B. Heightened Pleading Standard

Section 10(b) of the Securities Exchange Act of 1934 provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance . . . ." 15 U.S.C. § 78j(b). Under this section, the SEC promulgated Rule 10b-5, which makes it unlawful, among other things, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). To prevail on a claim for violations of either Section 10(b) or Rule 10b-5, a plaintiff must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). At the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b-5 must not only meet the requirements of Federal Rule of Civil Procedure 8, but also satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th

3

1    Cir. 2012).  Under Rule 9(b), claims alleging fraud are subject to a heightened pleading

2    requirement, which requires that a party "state with particularity the circumstances constituting

3    fraud or mistake."  Fed. R. Civ. P. 9(b).  Additionally, all private securities fraud complaints are

4    subject to the "more exacting pleading requirements" of the PSLRA, which require that the

5    complaint plead with particularity both falsity and scienter.  *Zucco Partners, LLC v. Digimarc*

6    *Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

**III.    REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE**

Defendants request that the Court incorporate by reference or take judicial notice of Exhibits 1–20 to the Declaration of Marie C. Bafus.  Dkt. No. 52.  Plaintiff requests that the Court take judicial notice of the consensus estimate from the Declaration of John T. Jasnoch.  Dkt. No. 60.

**A.    Incorporation by Reference**

In the Ninth Circuit, incorporation by reference is a doctrine that "treats certain documents as though they are part of the complaint itself."  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1002 (9th Cir. 2018).  A document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (internal quotation marks and citation omitted).  Although the truth of an incorporated document may not be considered *solely* to dispute *well-pled* facts, the Court need not accept as true conclusory allegations that are contradicted by documents referenced in the complaint.  *See In re Eventbrite, Inc. Securities Litigation*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020).

Defendants seek to incorporate Exhibits 1–15 and 18–20 from the Bafus Declaration into the Amended Complaint.  Plaintiff does not contest incorporation by reference for Exhibits 1, 6–12 and 19, but opposes the remainder of Defendants' request.  The Court finds that Exhibits 1–15, 18, and 19 are quoted or referred to extensively in the Amended Complaint and grants the request to

incorporate these documents by reference.

The Court declines to incorporate by reference Exhibit 20. This document consists of a table reflecting SentinelOne's common stock closing prices from June 1, 2022 to February 15, 2024. Although Plaintiff makes allegations about SentinelOne's stock prices, the Amended Complaint does not specifically refer to the table in the exhibit.

### B. Judicial Notice

Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999 (citation and quotations omitted). The Ninth Circuit has clarified that if a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document. *See id.*

#### i. Defendants' Request for Judicial Notice

Defendants contend that all of the exhibits to the Bafus Declaration are subject to judicial notice. The Court agrees. As for exhibits 1–15 and 18–19, which the Court incorporated by reference into the AC, the Court also finds that these documents are properly considered under the doctrine of judicial notice.

Exhibits 1–9, 11, and 16–19 are documents that SentinelOne publicly filed with the SEC. These documents are not subject to reasonable dispute, and the "accuracy" of these publicly filed SEC documents "cannot reasonably be questioned." *See Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1143 (C.D. Cal. 2018) (granting judicial notice of transcripts of excerpts of SEC filings); *In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at *5 (N.D. Cal. Aug. 14, 2019) (taking judicial notice of SEC filings); *Wochos v. Tesla, Inc.*, 2018 WL 4076437, at *2 (N.D. Cal. Aug. 27, 2018) (SEC filings subject to judicial notice); *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (noting that SEC filings are subject to judicial notice).

Exhibits 10 and 12–15 are transcripts of earnings calls. These documents are not subject to reasonable dispute and can be accurately and readily determined through public websites. Courts

routinely take judicial notice of transcripts of calls with and presentations to investors in securities cases. *See In re Splunk Inc. Sec. Litig.*, 592 F.Supp.3d 919, 929 (N.D. Cal. 2022) (taking judicial notice of transcripts of calls with and presentations to analysts and investors); *Forsyth v. HP Inc.*, 2021 WL 1391501, at *4–5 (N.D. Cal. Apr. 13, 2021) (taking judicial notice of conference call transcripts).

Exhibit 20 is a table reflecting SentinelOne's common stock closing prices from June 1, 2022 to February 15, 2024. Such historical stock prices are publicly available and not subject to reasonable dispute. *See Kampe v. Volta Inc.*, 2024 WL 308262, at *7 (N.D. Cal. Jan. 26, 2024) (taking judicial notice of historical stock prices).

Accordingly, the Court takes judicial notice of all the exhibits in the Bafus Declaration for the purpose of considering what was disclosed to the market. In doing so, the Court does not assume the truth of any of the facts asserted in those documents other than the stock price data. *See Wochos*, 2018 WL 4076437, at *2.

### ii. Plaintiff's Request for Judicial Notice

Plaintiff asks the Court to take judicial notice of the consensus estimate provided in the Jasnoch Declaration. Jasnoch bases this consensus estimate on a review of three analyst reports covering the stock for the relevant quarters. Dkt. No. 60 ¶¶ 2–5. Plaintiff does not request judicial notice of the underlying analyst reports, and only requests judicial notice of the consensus estimate Jasnoch derives from the reports. *Id.* Defendants oppose the request. Because the consensus estimate provided by Plaintiff's counsel is subject to factual dispute, the Court declines to take judicial notice of the estimate.

## IV. DISCUSSION

### A. Section 10(b) and Rule 10b-5

In their motion to dismiss, Defendants argue that the many of challenged statements fall under the PSLRA safe harbor and that Plaintiff has failed to plead actionable misstatements or omissions or a strong inference of scienter.

### i. Challenged Statements

The Court groups the challenged statements into three categories.

First, in its 10-Q and 10-K reports throughout the Class Period, SentinelOne defined ARR as "the annualized revenue run rate of our subscription and capacity contracts at the end of a reporting period, assuming contracts are renewed on their existing terms for customers that are under contracts with us." AC ¶¶ 93, 97, 100, 103. Relatedly, Defendants made statements in SentinelOne's 10-Q and 10-K reports allegedly "differentiating ARR from revenue." *See* Dkt. No. 59 at 18:16; AC ¶¶ 93, 97, 100, 103. Plaintiff challenges these statements as false and misleading because the ARR figure included non-guaranteed amounts for various "consumption and usage" charges for excess usage services or for additional optional services that the customer was not committed to use under their existing contracts, and/or otherwise included assumptions that some customers would spend more going forward than what was reflected in their existing contractual commitments. AC ¶¶ 94, 98, 101, 104. Plaintiff argues that excess "consumption and usage" charges, optional additional service charges, or assumptions of spending exceeding existing contractual commitments did not fall within SentinelOne's ARR definition. *Id.* Plaintiff further argues that because the ARR figures included these non-guaranteed inputs, the metric amounted to a partial revenue forecast, rendering statements differentiating ARR from revenue false and misleading. *Id.*

Second, the 10-Q and 10-K reports included SentinelOne's ARR figures. Specifically, Plaintiff challenges the ARR figures from the Q1 FY 2023 10-Q report; the Q2 FY2023 10-Q report; the Q3 FY2023 10-Q report; and the FY2023 10-K report. AC ¶¶ 93, 97, 100, 103.[1] Defendants Weingarten and Bernhardt repeated the same statements regarding the ARR metrics during the Q1 FY 2023, Q2 FY2023, Q3 FY2023 and FY23 earnings calls. *Id.* ¶¶ 94, 98, 101, 104. Plaintiff challenges these statements as false and misleading because the figures double-counted amounts for certain contracts and included excess data charges, optional additional

---

[1] Defendants later corrected each of the reported ARR figures. Namely, Defendants reduced the ARR reported in the Q1 FY 2023 10-Q from $339 million to $322 million; the ARR reported in the Q2 FY 2023 10-Q from $438.6 million to $417 million; the ARR reported in the Q3 FY 2023 10-Q from $487.4 million to $463 million; and the ARR reported in the FY2023 10-K from $548.7 million to $521.6 million. *Id.* ¶¶ 94, 98, 101, 104.

7

service charges or otherwise accounted for spending exceeding existing contractual commitments. *Id.*

Third, Defendants Weingarten and Bernhardt certified the contents of the Company's 10-K and 10-Q reports throughout the Class Period. *Id.* ¶¶ 95, 99, 102, 105.  Plaintiff argues that because SentinelOne lacked adequate controls to ensure that its reporting of ARR was not materially false and misleading, the certifications themselves were false and misleading.

### ii.  Falsity

Defendants contend that the statements challenged in the AC are not materially false or misleading.  "Falsity is alleged when a plaintiff points to [the] defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 899 F.3d at 1008 (alteration in original).  "In setting forth the reasons why they contend that each challenged statement is misleading, securities plaintiffs may rely either on an affirmative misrepresentation theory or an omission theory." *Wochos*, 985 F.3d at 1188 (citing 17 C.F.R. § 240.10b–5(b)).  "Under Rule 10b–5, an affirmative misrepresentation is an 'untrue statement of a material fact.'" *Id.*  "A statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (quotations and alterations omitted) (citation omitted).  "To be misleading, a statement must be 'capable of objective verification.'" *Id.* (internal citation omitted).

"Even if a statement is not false, it may be misleading if it omits material information." *Khoja*, 899 F.3d at 1008–09.  "An omission is material when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available." *Irving Firemen's Relief & Ret. Fund v. Uber Tech.*, 398 F. Supp. 3d 549, 555–56 (N.D. Cal. 2019) (quotation and citation omitted).

#### a.  Statements Relating to the ARR Inputs

Plaintiff contends that despite assuring investors that ARR was not a revenue forecast and publishing a definition of ARR that was based on a snapshot of "subscription and capacity contracts," Defendants calculated ARR to include projections of customers' charges for data usage

in excess of contractual limits, which customers were under no obligation to incur.  As a result, Plaintiff argues, Defendants materially overstated the reported ARR.

The Court is not convinced that the definition of ARR necessarily precluded the inclusion of variable overage fees, rendering the ARR definition of false.  However, given the weakness of the scienter allegations, the Court grounds its decision to dismiss based on Plaintiff's failure to allege a strong inference of scienter.  Accordingly, the Court need not decide for purposes of this motion whether Plaintiff adequately alleged falsity as to the ARR definition.

### b. Statements Concerning ARR Figures

Plaintiff argues that because the definition of ARR omitted material information, the ARR figures provided in the relevant 10-Q and 10-K reports and repeated by the individual Defendants were also false and misleading.  Here, the Court again need not decide for purposes of this motion whether Plaintiff adequately alleged falsity as to the ARR figures.

Plaintiff separately argues that these same representations were false and misleading because Defendants admitted that the ARR figures were inaccurate due to double-counting errors.  Defendants do not appear to contest these allegations of falsity on these grounds.  The Court finds that Plaintiff adequately alleged the ARR figures to be false and misleading due to these double-counting errors.  *See Kampe v. Volta Inc.*, 2024 WL 308262, at *31 (N.D. Cal. Jan. 26, 2024) (finding accounting violation recognized by Defendants to be plausibly false and misleading); *In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938, at *10 (N.D. Cal. Aug. 14, 2008) ("no dispute between the parties that defendants' financial statements were misstated" as a result of accounting errors and, accordingly, "only scienter" was "at issue.")

### c. Statements Concerning Adequate Controls

Plaintiff alleges that Defendant Weingarten and Defendant Bernhardt's Sarbanes-Oxley certifications were false because there were alleged "internal control" issues that resulted in recording and renewal inaccuracies.  Dkt. 59 at 18–19.  In support of this contention, Plaintiff points to statements from Confidential Witness 2 ("CW2"), who served as a "senior manager in the Finance department" and allegedly assisted with ARR calculations.  AC ¶ 56.  According to

1  CW2, SentinelOne's internal controls caught at least some of the double-counting of revenue
2  before the Class Period began. *Id.*
3    Critically, CW2's tenure at the company ended in early 2022, before the start of the Class
4  Period. *Id.* CW2's insights into practices before the class period alone do not render the
5  certifications of adequate controls during the Class Period to be false and misleading. If anything,
6  allegations that the controls in place caught at least some of the relevant errors prior to the Class
7  Period cut against an inference of inadequate controls. As such, the Court does not find the
8  Sarbanes-Oxley certifications to be plausibly alleged to be false or misleading.

### iii. Scienter

The PSLRA requires a plaintiff to specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and show that the allegations "give rise to a strong inference that the defendant acted with the required state of mind." *See Schueneman v. Arena Pharm. Inc*, 840 F.3d 698, 705 (9th Cir. 2016) (quotations and citation omitted). Thus, a plaintiff's burden "is to allege sufficiently particular facts to demonstrate a strong inference of scienter—a mental state that not only covers 'intent to deceive, manipulate, or defraud,' but also 'deliberate recklessness.'" *Id.* (citations omitted). The Ninth Circuit has defined "deliberate recklessness" as more than "mere recklessness or a motive to commit fraud." *See Zucco*, 552 F.3d at 991. "[D]eliberate recklessness is 'an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Schueneman*, 840 F.3d at 705 (quoting *Zucco*, 552 F.3d at 991 (internal quotation marks omitted)). "A complaint will survive," the Supreme Court has instructed, "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "All in all, though not impossible, this 'is not an easy standard to comply with—it was not intended to be— and plaintiffs must be held to it.'" *Schueneman*, 840 F.3d at 705 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam)). Although some facts might be used to support both an inference of scienter and an inference of falsity, the Ninth Circuit

consistently refrains from co-mingling the inquiries. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023).

"[The] [C]ourt conducts a dual inquiry when assessing whether the strong inference standard is met: first, it determines whether any one of the plaintiff's allegations is alone sufficient to give rise to a strong inference of scienter; second, if no individual allegations are sufficient, it conducts a 'holistic' review to determine whether the allegations combine to give rise to a strong inference of scienter." *Id.* (quoting *Zucco*, 552 F.3d at 992).

### a. Direct Knowledge

Plaintiff contends that Defendants' knowledge of facts contrary to their representations to investors is sufficient to allege scienter. According to Plaintiff, Defendants effectively conceded in their corrective disclosures on June 1, 2023 that they knew all along that projections of excess data usage charges were being included in ARR. Plaintiff argues that Defendants only removed such assumptions from the ARR calculation once "they realized they could no longer hide what they were doing from the market." AC ¶ 52.

Here, Plaintiff effectively asks the Court to infer scienter based on an inference that the statements were false and misleading.[2] Absent further supporting facts, Plaintiff may not bootstrap Defendants' acknowledgments that the ARR figures turned out to be inaccurately determined into an inference that Defendants deliberately tried to mislead investors or were deliberately reckless in making the original representations. *See Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) ("Appellant alleges facts that permit an inference that Hinton knew his statement was false, and then asks us to *infer from that inference* that Hinton acted with scienter. We decline to do so because stacking inference upon inference in this manner violates the statute's mandate that the strong inference of scienter be supported by facts, not other inferences."); *Kampe v. Volta Inc.*, 2024 WL 308262, at *31 (N.D. Cal. Jan. 26, 2024 (citing

---

[2] Plaintiff's briefing points to consensus estimates that Defendants hoped to reach as evidence of motivation to overstate the ARR metrics. *See* Dkt. No. 59 at 21. Plaintiff does not allege these facts in the Amended Complaint and the Court does not take judicial notice of the consensus estimate. As such, the Court does not consider these assertions.

*DSAM Glob. Value Fund v. Altris Software*, Inc., 288 F.3d 385, 390 (9th Cir. 2002) ("However, the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.") (citation and quotations omitted).

### b. Confidential Witness Allegations

Plaintiff also points to information from CW2 as probative of scienter. As noted, CW2 explains that before the Class Period, the Finance department identified errors in the calculation of ARR that were identical to the errors that Defendants acknowledged in their corrective disclosures. Plaintiff argues that these allegations demonstrate that Defendants knew that double-counting occurred and failed to take steps to remedy the issue before making the challenged statements.

CW2's account does not support an inference of scienter because the Amended Complaint does not provide sufficient indicia of reliability for the witness. Plaintiff fails to allege facts suggesting that CW2 had any interactions with the individual Defendants or was in a position to know anything about the individual defendants' state of mind. *See Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *14 (N.D. Cal. Nov. 16, 2020) (disregarding confidential witness statements where complaint did not identify who the confidential witness reported to or the nature of his relationship to the individual defendants); *Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *20 (N.D. Cal. May 22, 2012) (disregarding statements of confidential witnesses who did not directly communicate with defendants), *aff'd*, 759 F.3d 1051 (9th Cir. 2014). Further, as noted, CW2's tenure at the Company ended before the class period, further attenuating the relevance of their insights. AC ¶ 56; *see Aqua Metals*, 2020 WL 6710096, at *14 (disregarding confidential witness statements in support of scienter where confidential witness did not work at company during relevant period); *In re Silicon Image, Inc. Sec. Litig.*, 2007 WL 2778414, at *2 (N.D. Cal. Sept. 21, 2007) (rejecting scienter assertions by confidential witness about events post-dating employment), *aff'd*, 325 F. App'x 560 (9th Cir. 2009). Even if Plaintiff remedied these pleading deficiencies, allegations that SentinelOne maintained controls to detect and correct these accounting errors cuts against an inference that Defendants knowingly allowed these errors to occur.

### c. Suspicious Individual Trading Activity

Plaintiff alleges that Defendants Weingarten and Bernhardt both sold stock during the Class Period, benefiting from the inflated stock price before Defendants disclosed the truth. *See* AC ¶¶ 67, 74. Defendant Weingarten sold 1,420,447 SentinelOne shares during the class period for roughly $22.82 million, while Bernhardt sold 44,524 shares during the class period for roughly $840,573. *Id.* Plaintiff points to Weingarten's stock sales as being particularly indicative of scienter because they took place over the course of just three consecutive days in mid-December 2022 and were "effected in connection with year-end financial planning" rather than a 10b-5 plan. *Id.* ¶¶ 67, 71.

"'To evaluate suspiciousness of stock sales, [courts] consider, inter alia, three factors: (1) the amount and percentage of shares sold; (2) timing of the sales; and (3) consistency with prior trading history.'" *Intuitive Surgical, Inc.*, 2012 WL 1868874, at *22 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014) (quoting *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004)). While insider trading may serve as circumstantial evidence of scienter, it "is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize personal benefit from undisclosed inside information." *Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063–64 (9th Cir. 2014) (quoting *Zucco*, 552 F.3d at 1005).

Here, Plaintiff fails to allege any trading history to compare either Defendant's sales to previous activity. As such, the Court cannot conclude that these sales are plausibly alleged to be suspicious at all. *See id.*; *Aqua Metals*, 2020 WL 6710096, at *16 ("Plaintiffs must provide a meaningful trading history for purposes of comparison" against a defendant's pre-class period trades); *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *15 (N.D. Cal. Feb. 20, 2024) (rejecting trading allegations outright where complaint failed to allege defendants' prior trading history).

### d. Core Operations Doctrine

Plaintiff argues that the Court should also impute knowledge of falsity due to the importance of the ARR metric and "[b]y virtue of their positions at SentinelOne." AC ¶¶ 119, 121. This theory relies on the core operations doctrine. Under this doctrine, a plaintiff "must produce

13

either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations" or "witness accounts demonstrating that executives had actual involvement in creating false reports." *Intuitive Surgical*, 759 F3d at 1062.   But Plaintiff does not allege that the individual defendants played any role in calculating ARR or accessed the relevant data.  Nor does Plaintiff allege that anyone informed the individual defendants of any potential inaccuracies in this data.  The Court does not find that the core operations doctrine supports an inference of scienter.

### e. Holistic Analysis

The Court may consider "whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter," and if not, must "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Zucco*, 552 F.3d at 992; *see also Tellabs,* 551 U.S. at 323–24; *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 703 (9th Cir. 2012).

In support of scienter, Plaintiff points to Defendants' acknowledgements that the ARR metrics were inaccurately determined; inadequately supported confidential witness testimony suggesting that double-counting occurred (and was remedied) before the Class Period; allegations of individual trading without a reference point to determine if such trading was suspicious; and allegations that do not permit the Court to impute knowledge of falsity under the core operations doctrine.  Weighing these allegations holistically, the Court still cannot make the "strong inference" that Defendants took these actions with an intent to defraud investors for their own benefit.  In all, the inferences the Court could draw from the limited allegations relating to scienter are not as compelling as competing innocent inferences.  The more convincing theory is that Defendants failed to catch certain accounting errors and at most might unintentionally have misled investors by defining ARR with less than ideal clarity.  As such, the Section 10(b) claim fails.  The Court **GRANTS** the motion to dismiss the Section 10(b) claim **WITH LEAVE TO AMEND**.[3]

---

[3] Defendants contend that because ARR is a forward looking metric, all statements relating to the metric fall within the PSLRA safe harbor.  As noted, the Court grants this motion to dismiss based

14

## V. SECTION 20(A) CLAIM

Because Plaintiff does not adequately plead a Section 10(b) claim, his Section 20(a) claim fails. *See Lake v. Zogenix, Inc.*, 2020 WL 3820424, at *13 (N.D. Cal. Jan. 27, 2020). The Court **GRANTS** the motion to dismiss the Section 20(a) claim **WITH LEAVE TO AMEND**.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion to dismiss **WITH LEAVE TO AMEND**.

Since the Court cannot conclude that amendment would be futile, Plaintiff may file an amended complaint within 28 days of the date of this order. When preparing an amended complaint, Plaintiff is further ordered to prepare a statement-by-statement chart of the information required by 15 U.S.C. § 78u-4(b)(1) and (2) that specifically identifies: (a) each statement or action alleged to have been false or misleading, (b) the reasons the statement or action was false, misleading, or deceptive when made, and (c) if an allegation regarding the statement or omission is made on information and belief, all facts on which the belief is formed. The chart should clearly identify which statements or omissions are attributable to which Defendants and include a detailed statement of the facts giving rise to a strong inference that each Defendant acted with the required state of mind. Plaintiff should also summarize their allegations regarding what each Defendant knew with regards to the statement or omission and when they knew it. Such a chart should be included within any amended complaint or attached to any amended complaint. For guidance on the format for such a chart, the Court directs Plaintiff to review *In re NVIDIA Corp. Sec. Litig.*, 18-cv-07669-HSG, Dkt. No. 149-2.

**IT IS SO ORDERED.**

Dated: 7/2/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

on Plaintiff's failure to plead a strong inference of scienter. Accordingly, it need not decide for purposes of this motion whether the safe harbor applies to the statements at issue, because scienter is inadequately pled under any standard.

15