# EXHIBIT A

*In re SentinelOne, Inc. Securities Litigation*
Case No. 4:23-cv-02786-HSG
**Exhibit A: False and/or Misleading Statements**

| ¶¶[1] | Date, Medium, and Speaker | False and/or Misleading Statement | Reasons Why the Statement Was False and/or Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | **June 1, 2022 Misstatements** | | |
| 95, 97 | June 1, 2022, Q1 FY2023 Form 10-Q; Speaker: Company<br><br>June 1, 2022, Q1 FY2023 Press Release; Speaker: Company<br><br>June 1, 2022, Q1 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt[2]<br><br>June 1, 2022, Q1 FY2023 Earnings Call; Speaker: Bernhardt[3] | Each of the sources identified reports, with slight variation in language, ARR growth of 110% year-over-year. | Defendants' reported year-over-year ARR growth was materially false and misleading because it purported to compare the same metrics on a year-over-year basis – ARR for Q1 FY2022 versus ARR for Q1 FY2023 – without ever disclosing that (a) S1 was now calculating ARR on a different basis in FY2023 from what it had used in FY2022 (specifically, by including in FY2023 previously-unincluded consumption and usage | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed (§§II.A, III, V.A); Defendants knew that some revenue was double-counted in ARR because the same issue had occurred before S1's IPO, with reports on the discrepancies sent to the CFO (§V.A.2); and Defendants were highly incentivized to begin |

[1]    The paragraphs in §IV, which addresses Defendants' false and misleading statements, in which each subject is discussed.

[2]    Defendants Weingarten and Bernhardt, as well as Nicholas Warner, S1's President of Security, signed the Shareholder Letter.

[3]    "We delivered another strong quarter of revenue and ARR growth both well into the triple digits.  We achieved year-over-year revenue growth of 109%, reaching $78 million and ARR growth of 110% to $339 million."

| | | | revenue) and (b) the FY2023 ARR numbers included double-counted revenue. S1's actual year-over-year ARR growth rate was ***not*** 110% but was instead (based on Defendants' own subsequently restated Q1 FY2023 figures) only 100% (or roughly 10% ***less*** than what investors had been led to believe). | overstating ARR by the undisclosed inclusion of consumption and usage revenue and double-counted revenue in Q1 FY2023 because (a) the overstated ARR benefitted S1 in its acquisition of Attivo around the same time (§V.B.1), and (b) it benefitted Defendants to the extent they sold stock after the quarterly results were released (§V.B.2). |
|---|---|---|---|---|
| 95-96 | June 1, 2022, Q1 FY2023 Form 10-Q; Speaker: Company<br><br>June 1, 2022, Q1 FY2023 Press Release; Speaker: Company<br><br>June 1, 2022, Q1 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt[4] | Each of the sources identified reports, with slight variation in language, ARR of $339.0 million (specifically, $338,962,000) as of the quarter's end. | The reported quarterly ARR for Q1 FY2023 of $338,962,000 was materially false and misleading because it was overstated by S1's undisclosed inclusion of both (a) revenue from consumption and usage charges that its customers were not obligated to incur and (b) double-counted revenue. Defendants subsequently restated S1's reported Q1 FY2023 ARR downward from $338,962,000 to | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed (§§II.A, III, V.A); Defendants knew that some revenue was double-counted in ARR because the same issue had occurred before S1's IPO, with reports on the discrepancies sent to the CFO (§V.A.2); and Defendants were highly incentivized to begin overstating ARR by the |

---

[4]     Defendants Weingarten and Bernhardt, as well as Nicholas Warner, S1's President of Security, signed the Shareholder Letter.

| | | | | |
|---|---|---|---|---|
| | June 1, 2022, Q1 FY2023 Earnings Call; Speaker: Bernhardt[5] | | $322,281,000 – a reduction of roughly 5%. | undisclosed inclusion of consumption and usage revenue and double-counted revenue in Q1 FY2023 because (a) the overstated ARR benefitted S1 in its acquisition of Attivo around the same time (§V.B.1), and (b) it benefitted Defendants to the extent they sold stock after the quarterly results were released (§V.B.2). |
| 98-99 | June 1, 2023, Q1 FY2023 Form 10-Q; Speakers: Weingarten and Bernhardt[6] | Defendants Weingarten and Bernhardt both certified as to the following:<br><br>The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures … and internal control over financial reporting ... for the registrant and have:<br><br>(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed | These certifications were materially false and misleading because, throughout the Class Period, S1 did *not* have adequate or sufficient disclosure and internal controls in place to ensure that ARR was reported on an accurate and consistent basis, as evidenced by the recurrence of double-counted revenue in ARR. | Defendants knew that some revenue for a substantial number of accounts (roughly 200) was double-counted in ARR because the same issue had occurred before the IPO, with reports on the discrepancies sent to the CFO, and failed to prevent the problem from recurring (or allowed it to recur) even though, as evidenced by the steps they took after the Class Period, they understood what effective remediation would look like |

---

[5]    "We delivered another strong quarter of revenue and ARR growth both well into the triple digits.  We achieved year-over-year revenue growth of 109%, reaching $78 million and ARR growth of 110% to $339 million."

[6]    Both defendants signed these certifications, which were required pursuant to Section 302 of the Sarbanes-Oxley Act of 2002.

| | | | | |
|---|---|---|---|---|
| | | under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;<br><br>(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; [and]<br><br>(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the | | – and simply did not do it (§V.A.2). |

| | | | | |
|---|---|---|---|---|
| | | disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation… | | |
| **August 31, 2022 Misstatements** | | | | |
| 100, 102 | Aug. 31, 2022, Q2 FY2023 Form 10-Q; Speaker: Company<br><br>Aug. 31, 2022, Q2 FY2023 Press Release; Speaker: Company<br><br>Aug. 31, 2022, Q2 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt[7]<br><br>Aug. 31, 2022, Q2 FY2023 Earnings Call; Speakers: Weingarten[8] and Bernhardt[9] | Each of the sources identified reports, with slight variation in language, ARR growth of 122% year-over-year. | Defendants' reported year-over-year ARR growth was materially false and misleading because it purported to compare the same metrics on a year-over-year basis – ARR for Q2 FY2022 versus ARR for Q2 FY2023 – without ever disclosing that (a) S1 was now calculating ARR on a *different* basis in FY2023 from what it had used in FY2022 (specifically, by including in FY2023 previously-unincluded consumption and usage revenue) and (b) the FY2023 ARR numbers included double-counted revenue. S1's actual year-over-year | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed (§§II.A, III, V.A); Defendants knew that some revenue was double-counted in ARR because the same issue had occurred before S1's IPO, with reports on the discrepancies sent to the CFO (§V.A.2); and the overstated ARR benefitted Defendants to the extent they sold stock after the quarterly results were released (§V.B.2). |

---

[7]    Defendants Weingarten and Bernhardt, as well as Nicholas Warner, S1's President of Security, signed the Shareholder Letter.

[8]    "We once again delivered substantial revenue and ARR growth, both grew over 120% year-over-year driven by strong demand for our XDR platform across endpoint, cloud and identity."

[9]    "ARR and revenue both grew well into the triple digits. Revenue grew 124% year-over-year, and ARR grew 122% to $439 million."

| | | | | |
|---|---|---|---|---|
| | | | ARR growth rate was **not** 122% but was instead (based on Defendants' own subsequently restated Q2 FY2023 figures) only 111% (or roughly 11% **less** than what investors had been led to believe). | |
| 100-101 | Aug. 31, 2022, Q2 FY2023 Form 10-Q; Speaker: Company

Aug. 31, 2022, Q2 FY2023 Press Release; Speaker: Company

Aug. 31, 2022, Q2 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt[10]

Aug. 31, 2022, Q2 FY2023 Earnings Call; Speakers: Weingarten[11] and Bernhardt[12] | Each of the sources identified reports, with slight variation in language, ARR of $438.6 million (specifically, $438,640,000) as of the quarter's end. | The reported quarterly ARR for Q2 FY2023 of $438,640,000 was materially false and misleading because it was overstated by S1's undisclosed inclusion of both (a) revenue from consumption and usage charges that its customers were not obligated to incur and (b) double-counted revenue. Defendants subsequently restated S1's reported Q1 FY2023 ARR downward from $438,640,000 to $417,054,000—a reduction of roughly 5%. | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed (§§II.A, III, V.A); Defendants knew that some revenue was double-counted in ARR because the same issue had occurred before S1's IPO, with reports on the discrepancies sent to the CFO (§V.A.2); and the overstated ARR benefitted Defendants to the extent they sold stock after the quarterly |

---

[10]     Defendants Weingarten and Bernhardt, as well as Nicholas Warner, S1's President of Security, signed the Shareholder Letter.

[11]     "We once again delivered substantial revenue and ARR growth, both grew over 120% year-over-year driven by strong demand for our XDR platform across endpoint, cloud and identity."

[12]     "ARR and revenue both grew well into the triple digits. Revenue grew 124% year-over-year, and ARR grew 122% to $439 million."

| | | | | results were released (§V.B.2). |
|---|---|---|---|---|
| 103 | Aug. 31, 2023, Q2 FY2023 Form 10-Q; Speaker: Weingarten and Bernhardt | Defendants Weingarten and Bernhardt both certified as to the following:<br><br>The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures … and internal control over financial reporting ... for the registrant and have:<br><br>(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;<br><br>(b) Designed such internal control over financial reporting, or caused such | These certifications were materially false and misleading because, throughout the Class Period, S1 did *not* have adequate or sufficient disclosure and internal controls in place to ensure that ARR was reported on an accurate and consistent basis, as evidenced by the recurrence of double-counted revenue in ARR. | Defendants knew that some revenue for a substantial number of accounts (roughly 200) was double-counted in ARR because the same issue had occurred before the IPO, with reports on the discrepancies sent to the CFO, and failed to prevent the problem from recurring (or allowed it to recur) even though, as evidenced by the steps they took after the Class Period, they understood what effective remediation would look like – and simply did not do it (§V.A.2). |

| | | internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; [and]<br><br>(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation… | | |
|---|---|---|---|---|
| **December 6, 2022 Misstatements** | | | | |
| 104, 106 | Dec. 6, 2022, Q3 FY2023 Form 10-Q; Speaker: Company | Each of the sources identified reports, with slight variation in language, ARR growth of 106% year-over-year. | Defendants' reported year-over-year ARR growth was materially false and misleading because it purported to compare the same metrics on a year-over- | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they |

| | | | | |
|---|---|---|---|---|
| | Dec. 6, 2022, Q3 FY2023 Press Release; Speaker: Company<br><br>Dec. 6, 2022, Q3 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt[13]<br><br>Dec. 6, 2022, Q3 FY2023 Earnings Call; Speaker: Bernhardt[14] | | year basis – ARR for Q3 FY2022 versus ARR for Q3 FY2023 – without ever disclosing that (a) S1 was now calculating ARR on a *different* basis in FY2023 from what it had used in FY2022 (specifically, by including in FY2023 previously-unincluded consumption and usage revenue) and (b) the FY2023 ARR numbers included double-counted revenue. S1's actual year-over-year ARR growth rate was *not* 106% but was instead (based on Defendants' own subsequently restated Q3 FY2023 figures) only 96% (or roughly 10% *less* than what investors had been led to believe). | calculated ARR had changed (§§II.A, III, V.A); Defendants knew that some revenue was double-counted in ARR because the same issue had occurred before S1's IPO, with reports on the discrepancies sent to the CFO (§V.A.2); and the overstated ARR benefitted Defendants to the extent they sold stock after the quarterly results were released – including Defendant Weingarten's massive sale of 1.2 million shares of S1 stock just one week after the quarterly results came out (§V.B.2). |
| 104-105 | Dec. 6, 2022, Q3 FY2023 Form 10-Q; Speaker: Company | Each of the sources identified reports, with slight variation in language, ARR of $487.4 million (specifically, $487,427,000) as of the quarter's end. | The reported quarterly ARR for Q3 FY2023 of $487,427,000 was materially false and misleading because it was overstated by S1's undisclosed inclusion of both (a) revenue from | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed |

---

[13]    Defendants Weingarten and Bernhardt signed the Shareholder Letter.

[14]    "In the third quarter, we achieved year-over-year revenue and ARR growth of 106% and ARR grew to $487 million."

| | | | | |
|---|---|---|---|---|
| | Dec. 6, 2022, Q3 FY2023 Press Release; Speaker: Company<br><br>Dec. 6, 2022, Q3 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt[15]<br><br>Dec. 6, 2022, Q3 FY2023 Earnings Call; Speaker: Bernhardt[16] | | consumption and usage charges that its customers were not obligated to incur and (b) double-counted revenue. Defendants subsequently restated S1's reported Q3 FY2023 ARR downward from $487,427,000 to $463,440,000—a reduction of roughly 5%. | (§§II.A, III, V.A); Defendants knew that some revenue was double-counted in ARR because the same issue had occurred before S1's IPO, with reports on the discrepancies sent to the CFO (§V.A.2); and the overstated ARR benefitted Defendants to the extent they sold stock after the quarterly results were released – including Defendant Weingarten's massive sale of 1.2 million shares of S1 stock just one week after the quarterly results came out (§V.B.2). |
| 107 | Dec. 6, 2023, Q3 FY2023 Form 10-Q; Speaker: Weingarten and Bernhardt | Defendants Weingarten and Bernhardt both certified as to the following:<br><br>The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures … and internal control over financial reporting ... for the registrant and have: | These certifications were materially false and misleading because, throughout the Class Period, S1 did *not* have adequate or sufficient disclosure and internal controls in place to ensure that ARR was reported on an accurate and consistent basis, as evidenced by the recurrence | Defendants knew that some revenue for a substantial number of accounts (roughly 200) was double-counted in ARR because the same issue had occurred before the IPO, with reports on the discrepancies sent to the CFO, and failed to prevent the problem from recurring (or allowed it to recur) even though, as evidenced by the |

---

[15]    Defendants Weingarten and Bernhardt signed the Shareholder Letter.

[16]    "In the third quarter, we achieved year-over-year revenue and ARR growth of 106% and ARR grew to $487 million."

| | | | | |
|---|---|---|---|---|
| | | (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;<br><br>(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; [and]<br><br>(c) Evaluated the effectiveness of the | of double-counted revenue in ARR. | steps they took after the Class Period, they understood what effective remediation would look like – and simply did not do it (§V.A.2). |

| | | registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation… | | |
|---|---|---|---|---|
| **March 14 and 29, 2023 Misstatements** | | | | |
| 108, 110 | Mar. 29, 2023, FY2023 Form 10-K; Speaker: Company<br><br>Mar. 14, 2023, Q4 FY2023 Press Release; Speaker: Company<br><br>Mar. 14, 2023, Q4 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt<br><br>Mar. 14, 2023, Q4 FY2023 Earnings Call; Speaker: Bernhardt[17] | Each of the sources identified reports, with slight variation in language, ARR growth of 88% year-over-year. | Defendants' reported year-over-year ARR growth was materially false and misleading because it purported to compare the same metrics on a year-over-year basis – ARR for Q4 FY2022 versus ARR for Q4 FY2023 – without ever disclosing that (a) S1 was now calculating ARR on a *different* basis in FY2023 from what it had used in FY2022 (specifically, by including in FY2023 previously-unincluded consumption and usage revenue) and (b) the FY2023 ARR numbers included | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed (§§II.A, III, V.A); Defendants knew that some revenue was double-counted in ARR because the same issue had occurred before S1's IPO, with reports on the discrepancies sent to the CFO (§V.A.2); and the overstated ARR benefitted Defendants to the extent they sold stock after the quarterly |

---

[17] "Our ARR grew 88% to $549 million, crossing $0.5 billion, a significant milestone."

| | | | | |
|---|---|---|---|---|
| | | | double-counted revenue. S1's actual year-over-year ARR growth rate was **not** 88% but was instead (based on Defendants' own subsequently restated Q4 FY2023 figures) only 78% (or roughly 10% **less** than what investors had been led to believe). | results were released (§V.B.2). |
| 108-109 | Mar. 29, 2023, FY2023 Form 10-K; Speaker: Company<br><br>Mar. 14, 2023, Q4 FY2023 Press Release; Speaker: Company<br><br>Mar. 14, 2023, Q4 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt<br><br>Mar. 14, 2023, Q4 FY2023 Earnings Call; Speaker: Bernhardt[18] | Each of the sources identified reports, with slight variation in language, ARR of $548.7 million (specifically, $548,652,000) as of the quarter's end. | The reported quarterly ARR for Q4 FY2023 of $548,652,000 was materially false and misleading because it was overstated by S1's undisclosed inclusion of both (a) revenue from consumption and usage charges that its customers were not obligated to incur and (b) double-counted revenue. Defendants subsequently restated S1's reported Q4 FY2023 ARR downward from $548,652,000 to $521,652,000—a reduction of roughly 5%. | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed (§§II.A, III, V.A); Defendants knew that some revenue was double-counted in ARR because the same issue had occurred before S1's IPO, with reports on the discrepancies sent to the CFO (§V.A.2); and the overstated ARR benefitted Defendants to the extent they sold stock after the quarterly results were released (§V.B.2). |

---

[18]    "Our ARR grew 88% to $549 million, crossing $0.5 billion, a significant milestone."

| 111 | Mar. 29, 2023, FY2023 Form 10-K; Speaker: Weingarten and Bernhardt | Defendants Weingarten and Bernhardt both certified as to the following:<br><br>The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures … and internal control over financial reporting ... for the registrant and have:<br><br>(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;<br><br>(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our | These certifications were materially false and misleading because, throughout the Class Period, S1 did ***not*** have adequate or sufficient disclosure and internal controls in place to ensure that ARR was reported on an accurate and consistent basis, as evidenced by the recurrence of double-counted revenue in ARR. | Defendants knew that some revenue for a substantial number of accounts (roughly 200) was double-counted in ARR because the same issue had occurred before the IPO, with reports on the discrepancies sent to the CFO, and failed to prevent the problem from recurring (or allowed it to recur) even though, as evidenced by the steps they took after the Class Period, they understood what effective remediation would look like – and simply did not do it (§V.A.2). |

| | | supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; [and]<br><br>(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation… | | |
| **Defendants' False and Misleading ARR Definitions** | | | | |
| 112, 114 | June 1, 2022, Q1 FY2023 Form 10-Q; Speaker: Company<br><br>June 1, 2022, Q1 FY2023 Press Release; Speaker: Company | In their June 1, 2022 quarterly filings for Q1 FY2023 (the quarter ending April 30, 2022), Defendants defined ARR as "the annualized revenue run rate of our subscription contracts at the end of a reporting period, assuming contracts are renewed on their existing terms for | False and misleading because it remained unchanged from the prior quarter's definition despite the inclusion of projections of Consumption and Usage Charges beginning this quarter. | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed (§§II.A, III, V.A). |

| | | | | |
|---|---|---|---|---|
| | June 1, 2022, Q1 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt[19] | customers that are under subscription contracts with us." | | |
| 113-114 | Aug. 31, 2022, Q2 FY2023 Form 10-Q; Speaker: Company<br><br>Aug. 31, 2022, Q2 FY2023 Press Release; Speaker: Company<br><br>Aug. 31, 2022, Q2 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt[20]<br><br>Dec. 6, 2022, Q3 FY2023 Form 10-Q; Speaker: Company<br><br>Dec. 6, 2022, Q3 FY2023 Press Release; Speaker: Company<br><br>Dec. 6, 2022, Q3 FY2023 Letter to Shareholders; Speakers: | In their August 31, 2022 quarterly filings for Q2 FY2023 (the quarter ending July 31, 2022); their December 6, 2022 quarterly filings for Q3 FY2023 (the quarter ending October 31, 2022); and their March 14 and 29, 2023 quarterly filings for FY2023 (fiscal year ending January 31, 2023), Defendants defined ARR as "the annualized revenue run rate of our subscription and capacity contracts at the end of a reporting period, assuming contracts are renewed on their existing terms for customers that are under contracts with us." | False and misleading because, though it added the word "capacity," the change was not flagged for investors and the term "capacity contracts" was nowhere defined, the definition remained fundamentally unchanged from the FY2022 definition despite the inclusion of projections of Consumption and Usage Charges beginning Q1 FY2023. | Defendants admitted to adding consumption and usage revenue to ARR in "real time" without updating the ARR definition or explaining that how they calculated ARR had changed (§§II.A, III, V.A). |

---

| | | | |
|---|---|---|---|
| | Weingarten and Bernhardt[21]<br><br>Mar. 29, 2023, FY2023 Form 10-K; Speaker: Company<br><br>Mar. 14, 2023, Q4 FY2023 Press Release; Speaker: Company<br><br>Mar. 14, 2023, Q4 FY2023 Letter to Shareholders; Speakers: Weingarten and Bernhardt | | |

---

[21]     Defendants Weingarten and Bernhardt signed the Shareholder Letter.